UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GERALD CRAIG COLLICK,

            Plaintiff,

    v.

ROBIN JOY SMITH, *et al.*,

            Defendants.

CASE NO. 2:21-cv-01648-JCC-JRC

REPORT AND RECOMMENDATION

NOTED FOR: **November 18, 2022**

    This matter is before the Court on referral from the District Court and on defendants' motion for summary judgment. *See* Dkt. 20.

    Plaintiff, who is incarcerated at the Special Offender Unit of the Monroe Correctional Complex ("MCC-SOU"), brings suit under 42 U.S.C. § 1983 alleging that defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Specifically, he alleges that defendants denied him a gluten-free diet despite his known allergy to gluten. He also alleges that defendants violated his Eighth Amendment rights by not informing him to eat gluten prior to testing for a gluten allergy.

1    Defendants have moved for summary judgment on both claims and argue that plaintiff
2 has not alleged a viable claim and cannot show a constitutional violation occurred as a result of
3 denying plaintiff a gluten-free diet. Defendants have provided plaintiff with a notice of this
4 dispositive motion, plaintiff has responded, and defendants have replied.
5    After reviewing the motion and the relevant record, the Court concludes that plaintiff has
6 failed to rebut defendants' showing that they are entitled to summary judgment as to his Eighth
7 Amendment claims. Plaintiff has not established personal participation by defendants Awad and
8 Millager. Further, plaintiff has not established a claim of deliberate indifference to his serious
9 medical needs because he cannot show that defendant Smith knew of a substantial risk of harm
10 to him if she failed to renew his gluten-free diet. Rather, plaintiff's difference of opinion as to
11 medical treatment does not amount to deliberate indifference on the part of defendant Smith.
12 Accordingly, the Court recommends that defendants' motion for summary judgment be granted
13 and plaintiff's claims be dismissed with prejudice.

14                           **BACKGROUND**

15 **I.      Allegations in the Complaint**

16    Plaintiff, proceeding *pro se* and *in forma pauperis* ("IFP"), filed his complaint in
17 December 2021. *See* Dkt. 6. Plaintiff alleges defendants MCC-SOU staff ARNP Robin Smith,
18 Facility Medical Director Areig Awad, and Correctional Industries Manager 3 Alan Millager
19 violated his constitutional rights when they failed to renew his gluten-free diet. *See* Dkt. 6 at 3,
20 10–13.
21    Plaintiff sets forth two allegations in one count against defendants. First, plaintiff claims
22 defendants violated his Eighth Amendment rights by taking away his previously approved
23 gluten-free diet despite his continued allergy to gluten. Dkt. 6 at 13. Second, plaintiff claims that
24

defendants Smith and Awad violated his Eighth Amendment rights by ordering blood tests to confirm plaintiff's allergy and diagnosis of Celiac disease without properly preparing plaintiff for the test. *Id*. In support of these allegations, plaintiff asserts the following.

When plaintiff arrived at MCC-SOU in March 2010, he informed the medical provider there, ARNP Albert, that he was allergic to gluten and wheat food-based products. Dkt. 6 at 10. ARNP Albert directed him to sign a release for medical information to confirm plaintiff's allergy, which he did. *Id*. When the medical records came back from Virginia Mason Hospital about five weeks later, ARNP Albert scheduled a follow-up visit with plaintiff. *Id*. At the April 23, 2010, visit, ARNP Albert confirmed plaintiff's gluten and wheat allergy and submitted a health status report ("HSR") prescribing a gluten-free diet. *Id*.

In July 2019, ARNP Albert retired and defendant ARNP Smith replaced her as plaintiff's medical provider at MCC-SOU. *Id*. Defendant Smith ordered blood tests for plaintiff in the summer and fall of 2019 without informing him of the purpose of the tests or giving him pre-test instructions. *Id*. at 10–11. Because she failed to instruct plaintiff to eat gluten prior to the tests, they came back inconclusive as to plaintiff's allergy. *Id*. at 11. Plaintiff claims that medical personnel at Virginia Mason Hospital similarly failed to give him proper pre-test instructions for a Tissue Transglutaminase ("TTg") test performed in 2004 that returned a level of <1.2 u/ml, which indicates a negative result for a gluten allergy. *Id*.

Defendant Smith took plaintiff off the gluten-free diet after receiving the 2019 test results. *Id*. Plaintiff immediately requested that he be placed on a mainline alternative diet ("MLA") with a menu containing 20% gluten-free food products. *Id*. However, he continued to submit requests to defendant Smith for a return to a gluten-free diet, but she refused, telling him that she had already tested for the gluten allergy. *Id*.

1    In October 2020, defendant Smith informed plaintiff she would re-test for a gluten allergy
2 in November and instructed plaintiff to eat gluten and wheat products for about three weeks prior
3 to the test. *Id*. On his third day of eating gluten-based products, plaintiff had a severe allergic
4 reaction consisting of severe itching, joint pain, headache, acute swelling of the esophagus, as
5 well as a panic attack. *Id*. Prison officials took plaintiff to the medical unit where personnel gave
6 him a pill, possibly Benadryl, to ease his symptoms. *Id*. at 11–12.

7    On December 30, 2020, plaintiff went to the medical unit for a blood draw for gluten
8 allergy testing. *Id*. at 12. Plaintiff refused the test, however, because he had only consumed
9 gluten-based products for three days and therefore felt the test would return a negative result. *Id*.

10   Since that time, plaintiff lost his kitchen job and has had little money to buy gluten-free
11 products from commissary. *Id*. He has borrowed food from other incarcerated individuals or
12 made deals with them to obtain gluten-free products, but this has become very costly. *Id*.
13 Overall, since defendant Smith removed his gluten-free diet plaintiff has been extremely stressed
14 and frustrated, not knowing what he will eat day-to-day and fearing a negative reaction to
15 consuming gluten-based products. *Id*.

16 **II.    Defendants' Evidence**

17   Along with their motion for summary judgment (Dkt. 20), defendants have submitted
18 declarations of defendant Smith and defendant Millager. *See* Dkts. 21, 22. Defendant Smith
19 states that defendant Awad started working as the Facility Medical Director at MCC-SOU in
20 September 2018 but was not involved in gluten allergy tests. Dkt. 21 at 2. Defendant Smith has
21 been assigned to MCC-SOU since ARNP Albert retired in July 2018. *Id*. at 1. Defendant Smith
22 is aware from ARNP Albert that plaintiff told her he had an allergy to wheat gluten. *Id*. at 2.
23 ARNP Albert requested plaintiff's available medical records from Virginia Mason Hospital from
24

2004 and those records indicate that plaintiff does not have a wheat gluten allergy. *Id*. ARNP Albert never ordered in-house testing for a gluten allergy, but nevertheless issued a HSR for a gluten-free diet for plaintiff. *Id*.

When defendant Smith began working in MCC-SOU in 2018, ARNP Albert's HSR for a gluten-free diet was due to expire in June 2019. *Id*. Defendant Smith extended the gluten-free diet for one month while she reviewed plaintiff's case. *Id*. At that time, there was no diagnosis of Celiac disease in his active patient chart. *Id*.

Defendant Smith ordered the TTg test to look for antibodies against gluten, which would show an allergy if positive. *Id*. at 3. She does not recall whether she specifically told plaintiff she had ordered the test, but she did inform him that she was investigating his claim to have Celiac disease. *Id*. After reviewing his commissary purchases which showed that he consistently ordered gluten-containing foods as far back as 2012, defendant Smith did not think it necessary to instruct him to eat gluten-containing foods before the test. *Id*. In support, defendant Smith attaches a list of plaintiff's commissary purchases from January 4, 2012, through January 4, 2022. Dkt. 21-1, Ex. 4, at 16–51.

Defendant Smith states that plaintiff's TTg test came back "decisively negative" on July 3, 2019. Dkt. 21 at 3. At that time, defendant Smith had also seen the Virginia Mason GI-ordered results from June 17, 2004, which were also "decisively negative." *Id*. Further, she reviewed additional medical records from Virginia Mason and the endoscopic gastro duodenoscopy ("EGD") results from July 6, 2004, which have no findings consistent with Celiac disease. *Id*.

As to a potential positive result for Celiac disease, defendant Smith states,

> As Celiac disease is such a serious autoimmune condition involving considerable discomfort and nutritional deficiencies from malabsorption, I would always give a patient's subjective report the benefit of the doubt. Had the TTg test come back positive or even at the higher end of negative, I would have continued the gluten-

> free diet and referred the patient to Gastroenterology for the gold standard testing of Endoscopic gastro duodenoscopy (EGD). With a positive finding on the TTg test, I would have immediately marked the subjective report as objectively diagnosed.

*Id*.

After considering the 2019 negative TTg test, the 2004 negative TTg test, and the 2004 negative EGD test, defendant Smith determined that plaintiff did not qualify for a gluten-free diet. *Id*.

When plaintiff complained to defendant Smith that he had not been ordered to eat gluten before the TTg test, she offered to re-run the test. *Id*. She told him to eat the equivalent of two pieces of bread daily for two weeks prior to the test, per the prescribed conditions for testing. *Id*. Plaintiff refused to comply and defendant Smith did not re-run the test. *Id*. at 3–4.

In response to plaintiff's complaints of a severe allergic reaction to eating foods containing gluten for three days before testing and suffering a panic attack, defendant Smith states that plaintiff's condition is not consistent with the type of reaction one with a gluten allergy has upon eating gluten. *Id*. at 4. She states that, at worst, a Celiac reaction would have been to have more intestinal gas than usual, with associated bloating and diarrhea. *Id*. Contrary to plaintiff's assertion, the esophagus of one who has a gluten allergy does not "close up" after eating gluten. *Id*.

Turning to defendant Millager's declaration, he states that, in his role as Correctional Industries Manager 3 for food services at MCC, he oversees daily operations and administration of the food services department. Dkt. 22 at 1. However, the food services department has no role in deciding who receives a specific diet; rather, the department prepares diets according to an individual's OMNI diet report. *Id*. The OMNI diet reports indicate who receives a specific diet, whether it is for medical or religious reasons. *Id*. Defendant Millager, who is not a dietician, has

no role in medical decisions or treatment with respect to diets, and is not involved in changing any individual's prescribed diet. *Id.* at 2.

## DISCUSSION

### I. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When ruling on a summary judgment motion, the Court must take the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once the moving party has carried its burden under Rule 56, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

The opposing party cannot rest solely on his pleadings but must produce significant, probative evidence in the form of affidavits, and/or admissible discovery material that would allow a reasonable jury to find in his favor. *Anderson*, 477 U.S. at 249–50. Conclusory allegations and mere speculation are not enough to create a genuine issue of material fact. *See, e.g.*, *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed— show that the movant is entitled to it[.]" Fed R. Civ. P. 56(e)(3). Finally, because plaintiff is *pro*

1 *se*, the Court "must consider as evidence in his opposition to summary judgment all of
2 [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on
3 personal knowledge and set forth facts that would be admissible in evidence, and where
4 [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true
5 and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**II.    Personal Participation**

In their motion for summary judgment, defendants Awad and Millager contend that plaintiff has not established their personal participation. Dkt. 20 at 7–8. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing how a defendant caused or personally participated in causing the harm alleged in the complaint. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). To do so, a plaintiff must show that an individual defendant participated in or directed the alleged harm, or knew of the harm and failed to act to prevent it. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999).

In his response to the motion for summary judgment, plaintiff does not provide any evidence that addresses how defendants Awad and Millager personally acted to violate his constitutional rights. *See* Dkt. 26. Instead, plaintiff's response focuses on defendant Smith while making broad, general allegations of constitutional violations by "defendants" without setting forth any specific allegations against defendants Awad and Millager. Again, plaintiff's only mention of these two defendants in his complaint is in the Count listed at the end of his complaint. Dkt. 6 at 13. Plaintiff broadly alleges that "Defendants Physician Assistant Robin Joy Smith, Medical Director Dr. Areig Awad and Food Service Dietician Allan Millager have violated plaintiff's 8th amendment rights by taking his previously approved gluten free diet away

from him." *Id*. Also, despite not mentioning defendant Awad at all in the facts related to plaintiff's gluten allergy testing, plaintiff includes him in the Count asserting that defendant Smith violated his rights by performing two blood tests and by failing to instruct him to eat gluten before those tests. *Id*.

In support of their motion, defendants assert that defendant Awad was not involved in plaintiff's gluten allergy testing. Dkt. 20. In response, plaintiff has failed to come forward with any argument or evidence to conclude otherwise. *See* Dkt. 26. In the records plaintiff submitted in response to defendants' motion, there is no mention of defendant Awad, nor has he signed any of the documents submitted, signaling his awareness or involvement in the claims at issue here. *Id*.

Turning to defendant Millager, defendants contend that plaintiff has failed to state how defendant Millager was involved in plaintiff's gluten allergy testing or had a role in deciding his diet. Rather, defendant Millager works in the food services department and prepares meals according to the OMNI diet reports; he does not make medical decisions for the incarcerated population. Plaintiff counters with no argument or evidence to dispute defendants' arguments with respect to defendant Millager. As with defendant Awad, in the records plaintiff submitted in response to defendants' motion, there is no mention of defendant Millager, nor has he signed any of the documents submitted, signaling his awareness or involvement in the claims at issue here.

In sum, plaintiff's allegations in his complaint fail to show that defendants Awad and Millager participated in or directed the violations, or knew of the violations and failed to act to prevent them. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Without more, plaintiff's allegations are not sufficient to establish personal participation of these defendants.

1       Moreover, liberally construing the complaint, to the extent that plaintiff alleges these
2  defendants are liable based on their supervisory positions, such a theory of liability is not
3  available in § 1983 claims. *See Taylor*, 880 F.2d at 1045; *see also Ashcroft v. Iqbal*, 556 U.S.
4  662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must
5  plead that each Government-official defendant, through the official's own individual actions, has
6  violated the Constitution.")
7       Accordingly, the Court recommends granting the motion for summary judgment as to
8  defendants Awad and Millager and dismissing all claims against them.
9  **III.    Eighth Amendment Medical Treatment Claims**
10      Defendants contend that they are entitled to summary judgment on plaintiff's claim of
11 inadequate medical treatment in violation of the Eighth Amendment. Dkt. 20 at 4–7.
12      "It is undisputed that the treatment a prisoner receives in prison and the conditions under
13 which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*,
14 509 U.S. 25, 31 (1993). "A violation of the Eighth Amendment occurs when prison officials are
15 deliberately indifferent to a prisoner's medical needs." *Toguchi v. Chung*, 391 F.3d 1051, 1057
16 (9th Cir. 2004); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976).
17      "To establish an Eighth Amendment violation, a prisoner 'must satisfy both the objective
18 and subjective components of a two-part test.'" *Toguchi*, 391 F.3d at 1057 (quoting *Hallett v.*
19 *Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). "First, there must be a
20 demonstration that the prison official deprived the prisoner of the 'minimal civilized measure of
21 life's necessities.'" *Id.* (quoting *Hallett*, 296 F.3d at 744 (citation omitted)). Second,
22 a prisoner must demonstrate that the prison official "'acted with deliberate indifference in doing
23 so.'" *Id.* (quoting *Hallett*, 296 F.3d at 744 (internal citation and quotation marks omitted)). This
24

second consideration incorporates a subjective inquiry: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Further, "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Toguchi*, 391 F.3d at 1057 (internal quotation marks and citation omitted). Finally, "a mere difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference." *Id.* at 1058 (alterations in original) (citation omitted). This rule applies whether the indifference is between medical professional(s) and a prisoner or two or more medical professionals. *See, e.g.*, *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation omitted).

### A. Serious Medical Need

Plaintiff contends that defendants were deliberately indifferent to his need for a gluten-free diet, this need already existed, and defendants were aware of it when they declined to renew the gluten-free diet in 2019. Dkt. 26. Plaintiff also contends that defendants were deliberately indifferent to his medical needs when they failed to inform him to eat gluten prior to taking the gluten allergy tests. *Id*. Plaintiff asserts that, due to his medical condition of either Celiac disease or a gluten-sensitivity, he requires a gluten-free diet, and failing to provide that diet could – and here, did – result in significant physical and psychological pain. *Id.* at 13.

Defendants assert that because testing indicated plaintiff does not have Celiac disease or any other type of gluten-related allergy, plaintiff has failed to show that defendant Smith was deliberately indifferent to a serious medical need when she determined plaintiff no longer

qualified for a gluten-free diet. Dkt. 20 at 4–7. Defendants contend that plaintiff's claims amount to nothing more than a difference of opinion in appropriate treatment. *Id*. at 7.

Plaintiff has presented the following evidence that he has a serious medical need:

1. He was on a gluten-free diet from 2010 to 2019, prescribed to him by defendant Smith's predecessor at MCC-SOU. Dkt. 26 at 94–105.

2. Articles from the Gluten Intolerance Group outlining the differences between Celiac disease, non-Celiac gluten sensitivity, and wheat allergy, including different symptoms and reactions to gluten and wheat. Dkt. 26 at 36–50.

3. Outside medical records from 2003 – 2007 including, among other complaints, self-reported histories of Celiac disease or any other gluten-related allergy. Dkt. 26 at 73–76; 79–93. None of the records confirm through testing the presence of Celiac disease or any other gluten-related allergy. *Id*.

4. A self-written journal detailing his physical symptoms after defendant Smith removed plaintiff from the diet in July 2019. The noted symptoms include feeling nervous and weak, stomach cramping and pain, itching, nausea and vomiting, headaches, excessive gas, and hard stools. Dkt. 26 at 59–70.

5. Undated declarations from two individuals housed at MCC-SOU and in contact with plaintiff after defendant Smith removed plaintiff from the diet in July 2019. Dkt. 26 at 107–09. Damoan Steward confirms that plaintiff eats gluten-free food only. *Id*. at 107. Louis Chen recalls plaintiff describing the exchanges he made with other inmates for gluten-free foods, as well as his adverse reactions to gluten after he resumed a regular diet. *Id*. at 108–09. He also states that, when plaintiff moved to his unit in spring 2022, he "seems to be stable, though still working to secure gluten-free food items as much as he can." *Id*. at 109.

As previously noted by this Court, at least one federal circuit court of appeals has held that a plaintiff can show a "serious medical need" using evidence of both "the prisoner's symptoms at the time of the prison employee's actions" and the later "alleged harm to the prisoner." *See Watson v. Wash. Dep't of Corr.*, Case No. C17-5968-BHS-TLF, 2018 WL

REPORT AND RECOMMENDATION - 12

7150488, at *5 (W.D. Wash. Nov. 15, 2018) (quoting *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005)).

Upon review of plaintiff's submissions in response to defendants' motion, the Court will assume, for purposes of analysis, that plaintiff's evidence is sufficient to create a genuine issue of material fact regarding whether plaintiff has an inability to tolerate gluten (even if the condition was not diagnosed as Celiac disease) and whether he had a serious medical need under the objective first prong of the deliberate indifference test.

### B. Deliberate Indifference

Nevertheless, defendants are entitled to summary judgment based on plaintiff's failure to raise a genuine issue of material fact as to whether defendant Smith was deliberately indifferent to plaintiff's serious medical need.

#### 1. *Removal of gluten-free diet*

As to plaintiff's first allegation that defendant Smith's removal of his gluten-free diet amounts to deliberate indifference because plaintiff is allergic to gluten, defendants have presented evidence showing that, at the time she made the determination that plaintiff did not qualify for the diet, defendant Smith was not subjectively aware that any of plaintiff's symptoms were a reaction to consuming gluten. Although MCC-SOU medical staff ordered a gluten-free diet for plaintiff in 2010 and ARNP Albert renewed the order until her retirement in 2019, her replacement, defendant Smith, noted that plaintiff had never tested positive for Celiac disease and extended his diet for a month so that she could review his records. Her review of the records included those from Virginia Mason Hospital from 2004 through 2007, which do not show that plaintiff tested positive for Celiac disease or any other gluten-related allergy during that time.

Dkt. 21-1, Ex. 8. Those tests included the TTg test as well as the EGD, the "gold standard of testing" for Celiac disease, according to defendant Smith. Dkt. 21 at 3.

Plaintiff, too, submits these records in response to defendants' motion for summary judgment. *See* Dkt. 26 at 74–93. However, the Virginia Mason medical records from between 2003 and 2007 appear to show that plaintiff has a history of symptoms whether on a gluten-free diet or not. *Id*. These records include the following symptoms and notes:

> From 2003:
> - "diarrhea and crampy abdominal pain" (Dkt. 26 at 75)
> - "watery stools," "feels bloated" (*Id*.)
> - "moderately persistent diarrhea" (*Id*. at 76)
>
> From 2004:
> - "periodic head pain"; "chronic abdominal pain" (*Id*. at 74)
> - "GI complaints" (*Id*. at 79)
> - "Intermittent chest pain, he associates with reflux" (*Id*. at 80)
> - "This patient has been seen here in the Emergency Department multiple times with abdominal pain in the past. He has undergone a workup for this problem, but with no specific etiology being found. He is highly anxious, and he appears to be obsessive-compulsive." (*Id*. at 87)
> - "abdominal pain" (*Id*. at 89)
> - "questionable allergic reaction to gluten versus anxiety disorder" (*Id*. at 93)
>
> From 2007:
> - "He says he is gluten intolerant" (*Id*. at 82).

Additionally, in February 2004, plaintiff presented at Virginia Mason Hospital describing what he said was gluten-sensitivity reactions or symptoms, but no tests were performed to confirm plaintiff's complaints. *Id*. at 79–81. The ARNP made the following note on the question of gluten intolerance: "Celiac disease versus irritable bowel versus other etiology." *Id*. at 81. Further, in July 2004, plaintiff presented at Virginia Mason Hospital complaining of abdominal pain, and a doctor reported:

> He has a history of chronic abdominal and chest complaints, which are intermittent, and which have eluded any specific diagnosis. The patient has been insistent that

REPORT AND RECOMMENDATION - 14

>he is gluten sensitive, though there has apparently been no objective confirmation of this.
>
>He has most recently seen Dr. Otto Lin, where he underwent upper endoscopy and duodenal biopsies, in the hope of establishing once and for all the credibility of this concept of gluten sensitivity and sprue.
>
>* * *
>
>I suspect many of the symptoms emanate from anxiety, and post-procedure symptoms.

Dkt. 26 at 89–90.

After defendant Smith reviewed the Virginia Mason records and the July 2019 test results came back "decisively negative" for Celiac disease, defendant Smith removed plaintiff's gluten-free diet. Plaintiff filed a grievance requesting to be put back on the diet, and defendant Smith's response was, "Celiac testing is negative twice. We are sure. Please eat the meals provided for you." Dkt. 26 at 29.

This evidence—the previous medical records, including TTg and EGD tests, and the TTg test ordered by defendant Smith—indicates that defendant Smith did not believe that plaintiff had Celiac disease or any other gluten-related allergy. Accordingly, the evidence shows there is no genuine dispute of material fact that defendant Smith did not "draw the inference" that removing plaintiff from the gluten-free diet would place plaintiff at risk. Dkt. 21 at 3–4; *see Farmer*, 511 U.S. at 837.

Plaintiff has not shown a genuine dispute regarding defendant Smith's state of mind. To be sure, plaintiff has not put forth any evidence showing that defendant Smith knew plaintiff had a gluten-related allergy and intentionally disregarded it. In 2010, medical personnel at MCC-SOU prescribed plaintiff a gluten-free diet but did so without any concomitant positive testing. *See* Dkt. 26 at 94–105. Defendant Smith found no similar positive testing in any of plaintiff's

1 | previous medical records. Dkt. 21 at 2. While those records are peppered with terms such as
2 | "past medical history of Celiac sprue" and "allergy to gluten," among others, these are plaintiff's
3 | self-reported histories and complaints – not the impression or assessment of the medical
4 | professional evaluating plaintiff at the time. Dkt. 26 at 73–76; 79–93. And, again, the records are
5 | not accompanied by any positive testing for a gluten-related allergy or sensitivity. *Id*. Further,
6 | while plaintiff's journal of symptoms he had after defendant Smith removed the gluten-free diet
7 | is an extensive narrative of what he believes are adverse reactions to gluten, there is nothing in
8 | the record indicating that defendant Smith was aware of these reactions, attributed them to a
9 | gluten-related allergy, and then intentionally disregarded them. *Id*. at 59–70. The same goes for
10 | the declarations of fellow prisoners plaintiff has submitted regarding his symptoms after
11 | defendant Smith removed the gluten-free diet. *Id*. at 107–09. While this evidence is sufficient to
12 | create a genuine issue of material fact as to whether plaintiff has a serious medical need, it is not
13 | sufficient to present a genuine dispute as to defendant Smith's state of mind. Moreover,
14 | defendant Smith has presented evidence that she reasonably believed, based on plaintiff's
15 | medical records and testing, that not only did plaintiff not have a gluten-related allergy, but any
16 | reaction he did have in response to eating gluten for the re-test was not a reaction to eating
17 | gluten. Dkt. 21 at 3–4. Without a showing that defendant Smith was deliberately indifferent to
18 | plaintiff's asserted gluten-related allergy, plaintiff's Eighth Amendment claim amounts only to a
19 | difference of opinion as to appropriate treatment. *See Franklin v. Oregon*, 662 F.2d 1337, 1344
20 | (9th Cir. 1981) (stating a difference of opinion between a prisoner-patient and prison medical
21 | authorities regarding treatment does not give rise to an Eighth Amendment claim). This claim
22 | should be dismissed.

     2.  *Failure to inform plaintiff to eat gluten prior to testing*

  Turning to plaintiff's allegation that defendant Smith violated his Eighth Amendment rights by not informing him to eat gluten prior to taking the gluten allergy tests, the record on summary judgment reflects the following. Defendant Smith did not direct plaintiff to eat modest amounts of gluten in the two weeks leading up to the first TTg test in 2019 because her review of plaintiff's commissary purchases revealed that he consistently purchased gluten-containing food items as far back as 2012 (when he was on a gluten-free diet). Dkt. 21 at 3; Dkt. 21-1, Ex. 4, at 16–51. While plaintiff counters that he purchased gluten-containing items in order to "make deals" or trade with fellow prisoners for gluten-free items "in order to eat and have as much gluten and wheat-free foods as possible," (Dkt. 27 at 2), presumably even while he was on the gluten-free diet, he has produced no evidence showing that defendant Smith knew this to be the case or that he informed her at any point of his situation.

  When plaintiff complained to defendant Smith that he had not been directed to eat gluten prior to taking the TTg test, she offered to re-run the test and instructed him to eat the equivalent of two pieces of bread daily for two weeks prior to the second TTg test. Dkt. 21 at 3–4. But plaintiff refused to comply with these conditions after he had what he described as an allergic reaction and panic attack after eating gluten for just three days. *Id*. at 4. His symptoms included severe itching, joint pain, headaches, and acute swelling of the esophagus. *Id*. However, these symptoms were not consistent with the type of reaction someone with a gluten allergy has to eating gluten, according to the reference document defendant Smith reviewed in connection with plaintiff's condition. Dkt. 21-1, Ex. 9, at 69–78. Rather, reactions to gluten in an individual with Celiac disease include diarrhea, weight loss, abdominal discomfort, excessive gas and/or bloating, and constipation. *See* Dkt. 21-1 at 70. Again, plaintiff did not describe any of these

symptoms after eating gluten for three days. Thus, in light of this evidence at summary judgment – namely, defendant Smith's review of plaintiff's apparent gluten consumption prior to the first TTg test and subsequent offer to re-test, as well as plaintiff's refusal to re-test based on his stated reaction to pre-test conditions that defendant Smith could not attribute to a gluten allergy—the Court cannot find that defendant Smith was deliberately indifferent to plaintiff's medical needs when she did not inform him to eat gluten prior to gluten allergy testing. This claim should also be dismissed.

### 3. *Conclusion*

In sum, because plaintiff has not disputed adequately that defendant Smith did not act with any subjective intent of deliberate indifference or that his medical treatment was the result of anything more than a difference in opinion, the Court concludes that plaintiff has failed to go beyond the pleadings and identify facts that show that a genuine issue for trial exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Anderson*, 477 U.S. at 248. Accordingly, the Court recommends that summary judgment be granted in favor of defendants on the Eighth Amendment claims.

## IV. Qualified Immunity

Defendants assert that, even if plaintiff has presented evidence sufficient to survive a motion for summary judgment on his § 1983 claims, qualified immunity nonetheless protects them from liability for damages.

Qualified immunity requires an assessment of whether the official's conduct violated "'clearly established constitutional or statutory rights of which a reasonable person would have known.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). Qualified immunity is an affirmative defense to damages liability

and does not bar actions for declaratory or injunctive relief. *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991). The Court must decide the qualified immunity issue at the summary judgment stage when the issue turns on questions of law. *Torres v. City of Los Angeles*, 548 F.3d 1197, 1210 (9th Cir. 2008). The Court can analyze the two prongs of qualified immunity in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In considering the first prong, the Court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As discussed above, viewed in the light most favorable to plaintiff, the facts do not show that defendants' acts violated plaintiff's Eighth Amendment rights. Accordingly, defendants are entitled to qualified immunity because the first prong of the qualified immunity test is not satisfied.

## V.  IFP on Appeal

Plaintiff should be granted IFP status for purposes of an appeal of this matter. IFP status on appeal shall not be granted if the district court certifies "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]" Fed. R. App. P. 24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3). A plaintiff satisfies the "good faith" requirement if he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any arguable basis in law or fact. *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Because an appeal from this matter would not be frivolous, IFP status should be granted for purposes of appeal.

## CONCLUSION

The undersigned recommends that defendants' motion for summary judgment (Dkt. 20) be granted; plaintiff's claims should be dismissed with prejudice. Plaintiff's IFP status should granted for purposes of any appeal.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **November 18, 2022**, as noted in the caption.

Dated this 20th day of October, 2022.

J. Richard Creatura
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 20